# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OMAR ALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No. 14 C 4053 |
| | ) |
| VILLAGE OF TINLEY PARK, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Omar Ali ("Ali") has brought this action against the Village of Tinley Park ("Village") and its firefighters Kevyn Holdefer ("Holdefer"), John Duffy ("Duffy") and Steve Griffin ("Griffin"), charging the firefighters with violations of 42 U.S.C. §§ 1983 and 1981[1] and seeking indemnification from Village for any recovery on those claims. Ali also brings a number of state law claims under the auspices of 28 U.S.C. § 1367 ("Section 1367"). All defendants move to dismiss the federal claims pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) and the state law claims under Rule 12(b)(1). For the reasons stated in this opinion, this Court grants the motion to dismiss the Section 1981 claims with prejudice, but it denies the remainder of the motion.

## Standard of Review

Under Rule 12(b)(6) a party may move for dismissal of a complaint for the "failure to state a claim upon which relief can be granted." Familiar Rule 12(b)(6) principles require the district court to accept as true all of plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff (Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 632 (7th

---

[1] All further references to those Title 42 provisions will simply take the form "Section --," omitting the prefatory "42 U.S.C. §."

Cir. 2013)), while "legal conclusions or conclusory allegations that merely recite a claim's elements" are not entitled to such a presumption of truth (Munson v. Gaetz, 673 F.3d 630, 632 (7th Cir. 2012)). Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction are evaluated under the same standard (Scanlan v. Eisenberg, 669 F.3d 838, 841 (7th Cir. 2012)).

In recent years the Supreme Court has made an important change in the evaluation of Rule 12(b)(6) motions via what this Court regularly refers to as "the Twombly–Iqbal canon" (a usage drawn from (1) Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), as more finely tuned in Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), and (2) Ashcroft v. Iqbal, 556 U.S. 662 (2009)). That canon has introduced a notion of "plausibility" into the analysis, and in that respect our Court of Appeals has "interpreted Twombly and Iqbal to require the plaintiff to provid[e] some specific facts to support the legal claims asserted in the complaint" (McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted but brackets in original)). As McCauley, id. went on to reconfirm, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together."

## Statement of Facts

Ali is African American and of Muslim faith (FAC ¶ 4).[2] One afternoon in May he was walking home along the sidewalk directly across the street from the Tinley Park Fire Department wearing a "clearly visible turbin [sic] on his head" (id. ¶ 6). At that time firefighters Holdefer, Duffy and Griffin were "on duty" and "operating the equipment of the Fire Department as part of their routine duties" (id. ¶ 8). "Suddenly" Holdefer sprayed Ali with a "powerful" fire hose (id. ¶ 9), an act that Ali claims was purposeful and on account of his race or Muslim faith or both (id. ¶ 11). At the same time the other two firefighters -- Duffy and Griffin -- "observed Firefighter

---

[2] Because Ali's factual allegations must be treated as true for the purposes of a motion to dismiss, the facts set out here are drawn entirely from Ali's First Amended Complaint, "FAC."

Holdefer's actions, had a reasonable opportunity to intervene, and did nothing to stop him" (id. ¶ 10). Based on that incident, Ali asserts (1) several claimed violations of state law (which this opinion does not enumerate), (2) a claimed denial of equal protection in violation of Section 1981 and (3) several theories advanced under Section 1983: the denial of equal protection, the use of excessive force and the failure to intervene.

## Ali's Section 1981 Claims

Campbell v. Forest Pres. Dist. of Cook County, Ill., 752 F.3d 665, 671 (7th Cir. 2014) has recently held that Section 1981 does not create a private right of action against state actors -- instead Section 1983 provides the exclusive remedy for such claims. Indeed, Ali's Mem. 1 n. 1 has expressly abandoned reliance on that section. Accordingly this Court dismisses the Section 1981 claims with prejudice.

## Ali's Section 1983 Claims

To state a claim for relief under Section 1983, Ali must allege (1) misconduct that "was committed by a person acting under the color of state law" and (2) that as a result he was deprived of a right "secured by the Constitution and the laws of the United States" (West v. Atkins, 487 U.S. 42, 48 (1988)). Defendants argue that Ali's Section 1983 claims fail on two grounds: first, that the firefighters were not acting "under the color of state law," and second, that even if they were, they did not violate any of Ali's federally protected rights. For the reasons stated hereafter, the Section 1983 claims survive.

**Action Under Color of State Law**

Defendants contend that Holdefer was not acting under the color of state law because spraying a fire hose at a single individual outside of the context of an emergency is not a part of a firefighter's regular duties, and one cannot misuse power that one does not possess (see Gibson

v. City of Chicago, 910 F.2d 1510, 1518 (7th Cir. 1990)). That argument creates something of a slippery slope -- after all, Section 1983 was designed to curtail abuses of power, and by definition any abuse of power falls outside of the scope of one's authority.

Action under the color of state law is defined as the "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" (United States v. Classic, 313 U.S. 299, 326 (1941)). On that score the truly seminal opinion in Screws v. United States, 325 U.S. 91, 111 (1945) taught:

It is clear that under "color" of law means under "pretense" of law.

Hence officers may act under the color of state law even if they are not obeying it (see id.). Of course Section 1983 does not cover actions by officers entirely "in the ambit of their personal pursuits" (id.), nor does the "mere assertion that one is a state officer" lead to the inexorable conclusion "that one acts under color of state law" (Wilson v. Price, 624 F.3d 389, 392 (7th Cir. 2010)). As stated above, the key is that the office is acting with the pretense of legal authority to perpetrate a deprivation of rights.

However artificial such a distinction may be, in defining what is "under color of law" the cases draw a distinction between activities that are so wholly unconnected to one's authority that they are functionally equivalent to those of any private citizen (and so are not under color of law) and those that are improper extensions of one's authority (and thus do count as under color of law). Inevitably that inquiry ends up becoming highly fact-specific. For instance, Wilson, id. at 393 held that an alderman was not acting under the color of state law when he showed up at an auto repair shop and punched an auto mechanic, even though he was visiting the auto repair shop to address a problem raised by his constituents. Even if he arrived at the shop "in a capacity legitimately related to his role as legislator," the ensuing decision to haul off and punch the

4

mechanic was wholly unconnected to his legislative duties (id.). It "entered the realm of law enforcement" (id.).

Moreover, the fact that an individual uses the accoutrements of state authority is not always conclusive (see Gibson, 910 F.2d at 1516), though of course it can be relevant. In Vanderlinde v. Brochman, 792 F. Supp. 52, 53-54 (N.D. Ill. 1992), a case that defendants argue parallels the one at hand, this Court found no action under color of law when a duo of firefighters flashed their badges, proclaimed that they were "the law in Oak Lawn" and proceeded to brutally beat up two individuals. In that context the firefighters were not misusing any power that they "possessed by virtue of state law," because law enforcement was no part of their job definition.

This is not to say that only law enforcement officers can act under color of law when they use such force. For example, some colleagues of this Court have upheld claims against non-law-enforcement officers when the use of force is simultaneous with and triggered by an official duty. For example, Cole v. City of Chicago, 06 C 4704, 2008 WL 68687, at *4 (N.D. Ill. Jan. 4, 2008) held that a paramedic acted "under color of state law" when he allegedly used excessive force while moving the plaintiff in and out of the ambulance, and Travis v. Keiper-Knapp, 09 C 3469, 2011 WL 5395821, at *3 (N.D. Ill. Nov. 8, 2011) held similarly where paramedics used force "in part . . . so that the paramedics . . . could complete their duties."

On analysis this case comes closer to the paramedic cases than to Vanderlinde—Ali's allegations create the plausible inference that the firefighters' use of force was coextensive with the exercise -- though an improper exercise -- of a job-related duty. As the FAC alleges, the firefighters were on duty and operating the equipment as part of their ordinary duties at the point that Holdefer sprayed Ali with the fire hose. Other factors, too, support the conclusion that Ali has adequately pleaded action under color of state law: Unlike the firefighters in Vanderlinde,

Holdefer used a fire hose—a tool with which he was uniquely entrusted by virtue of his official position—to perpetrate the alleged harm. In addition, he was then clearly on duty -- and at the station house at that. In sum, this Court refuses to dismiss the Section 1983 claims on the ground that there was no action under the color of state law.[3]

**Deprivation of Federal Rights**

Having thus failed to challenge properly the "under color of state law" prerequisite for a Section 1983 claim, defendants go on to contend that Ali's claims of the denial of equal protection, of excessive force and of the failure to intervene fall short. But as explained below, each survives.

**Equal Protection**

To establish a denial of equal protection, Ali can show that he was either (1) discriminated against because of his membership in a protected class or (2) that he was intentionally discriminated against and that there was no rational basis for that different treatment (a so-called "class-of-one" theory -- see, e.g., Geinosky v. City of Chicago, 675 F.3d 743, 747 (7th Cir. 2012)). Ali's FAC makes out a claim on either of those theories.[4]

---

[3] While this Court has not unearthed any cases in this Circuit that directly parallel this one, a District Court in Pennsylvania has decided a case strikingly similar to this one. In that case the court found action under the color of state law where a group of volunteer firefighters engaged in a pattern of nightly harassing activities at the station house, including "(1) blaring air horns and sirens; (2) flood lights; (3) shouting; (4) stalking; (5) staring; (6) littering; (7) public displays of sexual fornication; (8) public urination; (9) parties with alcohol consumption with civilians; (10) females sunbathing; (11) curse words exclaimed; (12) nightly cookouts; and (13) personal vehicles peeling out" (Gemmell v. Hall, 06 CV 1024, 2007 WL 2085327, at *1, 5 (W.D. Pa. July 19, 2007)). Because we District Judges are regularly (and properly) reminded that our opinions carry no precedential force, this reference to Gemmell is only informational.

[4] Defendants argue that Ali cannot simultaneously advance both theories, but Rule 8(d)(3) expressly allows plaintiffs to pursue inconsistent theories. In purported support of their argument to the contrary defendants cite Thorncreek Apartments III, LLC v. Vill. of Park Forest, 970 F. Supp. 2d 828, 843 (N.D. Ill. 2013), where on a motion for summary judgment the Court

1.     **Discrimination as a Member of a Protected Class**

To make out a prima facie case for discrimination on account of race or religion, Ali must show that he is a member of a protected class, that he was treated differently from others similarly situated and that he was so treated because of his protected status (see Chavez v. Ill. State Police, 251 F.3d 612, 635-36 (7th Cir. 2001)).[5] As for the first two of those three elements, Ali is concededly a member of a protected class, and his allegation that he was abruptly sprayed with a fire hose creates the plausible inference that he was treated differently from others similarly situated. It is surely an extraordinary event when a firefighter hits a pedestrian with water from a fire hose as the victim walks down the street in broad daylight. While Ali does not identify any specific "similarly situated" individuals, Geinosky, 675 F.3d at 748 has stated in another equal protection case that "[s]uch a requirement would be so simple to satisfy here that there is no purpose in punishing its omission with dismissal" and that "[t]o require more would elevate form over substance".

More particularly, FAC ¶¶ 11-12 allege sufficient facts to support the plausible inference that Holdefer sprayed him purposefully "based on his race and/or Muslim faith." Ali was wearing a "clearly visible" turban and was suddenly and inexplicably sprayed. Any speculation that Holdefer's conduct may have been accidental would do violence to the fundamental propositions that Ali's well-pleaded allegations are not only to be treated as gospel for Rule

---

noted that a class-of-one claim may be fundamentally incompatible with a race-based equal protection claim. Though that may perhaps be so at the summary judgment stage, where (as at trial) an election of remedies could be called for, it does not apply in a Rule 12(b)(6) pleading context.

[5] Defendants argue that Ali's claims must meet rational basis review, but the proper standard here is strict scrutiny, because Ali alleges that he was discriminated against on the basis of his race and religion (see Srail v. Vill. of Lisle, Ill. 588 F.3d 940, 943 (7th Cir. 2009)). Thus it will be defendants' burden to proffer a rationale for the conduct that is narrowly tailored to achieve a compelling state interest (Alexander v. City of Milwaukee, 474 F.3d 437, 444 (7th Cir. 2007)).

12(b)(6) purposes but are to get the benefit of favorable inferences. Moreover, in any event plausibility does not mean probability (Twombly, 550 U.S. at 556). [6]

### 2. Class-of-One Discrimination

To make out a case under this theory, Ali must show that he was intentionally treated differently from others similarly situated and that there is no rational basis for such difference in treatment (Geinosky, 675 F.3d at 747). As the just-completed discussion makes clear, Ali has set out facts that plausibly suggest he was treated differently from others who were similarly situated. Furthermore, given the randomness of the event at issue, Ali also sets out facts that plausibly suggest that the treatment occurred for no rational reason.

**Use of Excessive Force**

Defendants also contend that Ali has failed to state a Fourth Amendment claim for the use of excessive force, on the asserted ground that there has been no seizure (see McCoy v. Harrison, 341 F.3d 600, 605 (7th Cir. 2003)). But the FAC alleges sufficient facts to reject that position. Brower v. County of Inyo, 489 U.S. 593, 597 (1989) (emphasis in original) has explained that a seizure occurs when there is "governmental termination of movement through means intentionally applied." Such termination of movement may occur by "either physical force . . . or, where that is absent, submission to the assertion of authority" (Acevedo v. Canterbury, 457 F.3d 721, 725 (7th Cir. 2006) (emphasis in original)),[7] and it may occur

---

[6] Compare, for example, the holding in Swanson v. Citibank, N.A., 614 F.3d 400, 405 (7th Cir. 2010) that identification of (1) the type of discrimination that occurred, (2) by whom and (3) when sufficed to survive a motion to dismiss a claim for discrimination under the Fair Housing Act.

[7] In attempted support of their argument that there was no seizure, defendants point to McCoy, 341 F.3d at 604, 605, which found there was no seizure when an animal welfare investigator backhanded the plaintiff and briefly held her arm, reasoning that the physical force was not accompanied with a show of authority. But our Court of Appeals' later decision in Acevedo, 457 F.3d at 725 clarified that physical force alone generally suffices to constitute a seizure. By

8

simultaneously with the use of excessive force (Brower, 489 U.S. at 599). In short, the allegation that Holdefer intentionally used a fire hose to spray Ali plainly qualifies as a statement that a seizure took place.

**Failure To Intervene**

As Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994) has explained, a "state actor's" failure to intervene may render him "culpable" under Section 1983. Police officers have a particularly well-established duty to intervene when they witness constitutional violations by their fellow officers. On that score Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972) has long since taught that "it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." Defendants argue that the obligation to intervene is confined to the law enforcement context and that as a matter of principle firefighters cannot be liable under a failure-to-intervene theory. That argument is unavailing, and so this Court denies the motion to reject that theory here.

While this Court has found no Seventh Circuit caselaw extending the duty to firefighters, neither has it found any precedential caselaw explicitly cabining the duty to police officers -- and the parties do not cite any. If anything, the underlying rationale that "[o]missions as well as actions may violate civil rights" (Yang, 37 F.3d at 285) suggests the very opposite. In our Court of Appeals' own words, the "foundation for the failure-to-intervene theory of liability" is the notion that nonfeasance can be "a form of personal involvement in [another person's] misconduct" (Sanchez v. City of Chicago, 700 F.3d 919, 928 (7th Cir. 2012)).

---

contrast, in the absence of a "concomitant showing of authority" (id. at 724-25) some contacts -- like the one in McCoy -- are "too minor to constitute a 'seizure' . . . without doing violence to that word." Surely the spraying of a human being with the powerful jet from a fire hose hardly qualifies as a minor contact that requires such a concomitant showing.

And though the Constitution generally imposes only "negative duties" on state actors (Yang, 37 F.3d at 285) -- duties not to impair rights, rather than affirmative duties to act[8] -- courts have found such an affirmative duty where there is some special relationship between an officer and a citizen. Custodial relationships, for example, can give rise to a duty to intervene. Thus Durham v. Nu'Man, 97 F.3d 862, 868 (6th Cir. 1996) held squarely that a nurse had a duty to intervene when she failed to protect a patient from being beaten by another hospital security officer in her presence. Because the patient was in the custody of the hospital and the nurse had summoned the offending officer (though not of course to beat the patient), she had incurred a duty to act (id.).[9]

Because the underlying rationale for the duty to intervene sweeps much more broadly than law enforcement, this Court declines to find as a matter of law that firefighters cannot have a duty to intervene. Accordingly it denies the motion to dismiss Ali's failure-to-intervene argument. While firefighters are not law enforcement officers, this case is unique in that the alleged wrong was perpetrated with a tool that the firefighters had special expertise in handling and with which firefighters are entrusted to promote public safety. This opinion does not of course, at this threshold pleading stage, speak to Ali's likelihood of success on that score -- a

---

[8] For example, DeShaney v. Winnebago County Dep't. of Soc. Servs., 489 U.S. 189, 194-97 (1989) held that the Department of Social Services had no duty to protect a child from the hands of his father, a private actor.

[9] Defendants point to several district court opinions holding that prosecutors have no duty to intervene to prevent the unlawful conduct of other prosecutors and police officers, thus declining to apply the duty to intervene outside of a police context. But some more recent district court opinions have come to the opposite conclusion, albeit in situations where prosecutors performed functions similar to the police (Rivera v. Lake County, 974 F. Supp. 2d 1179, 1191 (N.D. Ill. 2013); Saunders v. City of Chi., 12 C 9158, 2013 WL 6009933, at *10 (N.D. Ill. Nov. 13, 2013)). In all events, however, a string of district court decisions on either side of a legal issue has the same precedential force -- zero -- as a single such opinion.

question that will naturally turn on factual questions regarding the firefighters' knowledge, their ability to intervene and the timing of the situation.

## Conclusion

As stated at the outset of this opinion, this Court grants with prejudice defendants' motion to dismiss Ali's Section 1981 claims but denies the remainder of their motion. Defendants are ordered to answer the FAC on or before January 26, 2015, and this action is set for a status hearing at 9 a.m. February 3, 2015.

Milton I. Shadur
Senior United States District Judge

Date: January 7, 2015